May it please the court, Zandra Lopez of the Federal Defenders on behalf of Mr. Festa. The district court explained Mr. Festa's sentence by stating, what we are doing here is an attempt to get some help in the fundamental way that he needs help. This was a clear violation of the Supreme Court rule, which precludes sentencing courts from imposing or lengthening a term of imprisonment to promote an offender's rehabilitation. The court also violated other clearly established law by failing to calculate the guidelines, failing to provide a legitimate explanation under 3553, or justifying the almost 300% above the high end of the guidelines. Counsel, let me ask you this. When you look at Tapia, or however you say it, there's no question what the Supreme Court said about making a sentence exclusively depend on treatment. However, where you have no objection, don't you have to show that there is a reasonable probability or likelihood that the judge would re-sentence the defendant to a different sentence, a lower sentence? What I'm troubled about in this case is, this is the fourth time around. You have the first two that were clearly within the guidelines. The last one, however, in effect was almost 21 months. So this incrementally was not that different. What is your best argument that there is a reasonable probability or likelihood that if we reverse this, send it vacated, send it back for a new sentence, that the judge in this case would impose a different sentence than what was done in this instance? Yes, Your Honor. Two things. First, the Supreme Court in Tapia actually said, if the record shows that it may have lengthened the sentence to ensure rehabilitation- Could you speak up just a little bit? Maybe we need to turn the microphone up a little bit. Could you hear me now? No, it's a little better. Oh, okay. Thank you. I was just saying that the Supreme Court in Tapia said that if the record shows that it may have lengthened the sentence, then there is error. But getting into the reasonable probability issues, there's at least three reasons. And the first one is looking at what the probation officer recommended. Prior to the sentencing hearing, the probation officer considered the legitimate 3553A factors, including all of the prior violations, the severity of the offense, deterrence. And the probation officer recommended the mid-range this time of six months. Forgive me, but wasn't there a concern expressed about that the trust of the court had been violated in this instance? And what role, if any, should we attribute to that in what the judge would do if we vacate the current sentence? Sure. So the probation officer also discussed the breach of trust and still recommended a six-month sentence. It was only at the hearing that the probation officer changed its mind after hearing the recommendation for the Bureau of Prisons Treatment Program. And the probation officer specifically said at Excerpt of Record 24 that the custodial part is to allow him to get treatment to put him in a residential program. And in fact, during the prior violation, the probation officer, Excerpt of Record 75, indicated that it was, at that time, was recommending 24 months specifically for rehabilitation and no other reason. So it was pretty clear. And also, the guideline range here is six to nine months. There's no explanation other than rehabilitation in this case. In the prior sentence, my understanding was that the 21 months was just time served. So how should we consider what that sentence length was? Good point, Your Honor. So during the prior offense, he did get a 20-month sentence and I believe 17 days. That was a time-served sentence, so the court didn't necessarily sentence him to 20 months. And it was during the pandemic. There was extraordinary circumstances. So it wasn't that the district court found that that was sufficient and necessary under 3553A, but it was just under the extraordinary circumstances that he did get 20 months. And it's important to note that in this case, the district court didn't say why 21 months wasn't appropriate or 22 months or 23. Isn't this why we generally require a contemporaneous objection, right? Because, I mean, the court said the things that you quoted, which are suggestive of relying on a consideration that's prohibited under TAPIA. But he also said the thing that Judge Smith mentioned about the breach of trust. Before that, he began by saying, we've been a very long time getting to this point, which I take to be a reference to the fact that this was the fourth violation. And given all of that, and he wasn't put on notice that there was a potential objection that he might need to say more, in which case he could have explained it. So given the sort of ambiguity in what he said, how are you able to say that it's plain that there was a violation of TAPIA? Well, first, TAPIA has been on the record for more than a decade. This court has reversed repeatedly under plain error for this type of error. So this court has found this to be error. And addressing specifically, and I'd also like to note that the defense attorney did repeatedly say, this isn't going to work because although you're recommending treatment, it didn't happen last time. It's not going to happen this time. And that's because the district court has no authority to implement its intent. And I would like to address the other concerns that your honor talks about, breach of trust, long time getting here. The issue is when we get to what the reason, the district court's statement as to why it was imposing the sentence. It starts off at excerpt of record 30. What we are doing here is an attempt to get him some help in the fundamental way. So this was the reason for the 24-month sentence. So although she did mention breach of trust in revoking the sentence, but when she gets to the heart of why she imposed the 24 months, it was because of this need to get him the help that he needed. Counsel, let me just ask you, arguing, you're the district judge now. You're back here, you've got this man, he's got a serious problem. He really needs some treatment. Is there any way after Tapia that the district judge can take into account the need for treatment? Or does he or she have to couch it in something else and say, you know, you've breached my trust. I just can't, I can't trust you anymore. I'm going to sentence you to 24 months. With the understanding, basically, without saying so, that that's the reason he's doing it. What happens here? Can you do that as a district judge? Well, I'm assuming that the district court has to provide its actual basis for the reason. The court can, Tapia makes clear what the court can do. It can consider opportunities, indicate that there are opportunities for rehabilitation, but it can't do more than that. And that's what happened here. But that's what happened here. The court did more than just considering the opportunities. The court can consider rehabilitation, and 3582 says it can, to revoke, to prolong, or to impose a condition of supervised release. But what it can't do, and what's absolutely clear in Tapia, is lengthen the sentence for purposes of rehabilitation. And that's what the court did here. You want to save any of your time? Yes, Your Honor. My colleagues and I will have further chances to question. Very well, let's hear from the government. Good morning, Your Honors, and may it please the court. Jacqueline Stahl for the United States. I'd like to pick up where Judge Smith just left off. There is an appropriate way to look at treatment in this case. This is sex offender treatment. He poses a serious danger to the community. When we look at the record, every single OSC petition says that. His doctors say that. He says that. This defendant has said, if I don't receive treatment, if I continue in this behavior, it's only a matter of time before there is hands-on victimization of a child. Certainly, Tapia did not mean to preclude a district court judge from adequately and properly considering the danger to the community. Wait, are you arguing that Tapia has an exception for sex offender treatment? No, Your Honor, but under the 3553A factors, a judge can consider danger to the community. And here, without treatment, this individual is a danger to the community. But of course, there is more here to justify. But so you are arguing, I mean, so are you saying that it is OK to lengthen the sentence for treatment if it's for sex offender treatment? I don't believe I could go that far, Your Honor. But I think it is maybe a wording difference. If you are considering danger to the community, you can put someone in custody to keep the community safe. And here, that's what was done. But the district court didn't say anything about danger to the community, right? I mean, maybe she could have, but there's nothing in the sentencing transcript from the judge that refers to that, is there? But there's repeated arguments from the government and from probation. So first, as to just justifying the 24 months, the government argued that just two days after his release, he began violating. And it wasn't just violating. It was serious breaches of the court's trust. It was dangerous behavior. This defendant has pedophilia disorder. He was seeking out adult pornography. He was seeking out child pornography. He was looking at nude pictures of children. And he was failing to go to treatment. Both the government and probation said that's a serious breach of the court's trust, that he needs to be held to account for the consequences of his actions. I think all of us are struggling with the same thing. Regardless, for a moment, what the judge did in this case is that the government's positioned that under 3553A, that the district judge in this case could have simply said, look at all these breaches of my trust. This represents a danger to the community. Therefore, I'm going to sentence or extend the sentence to 24 months. That's OK, Under Tapia? Yes, Your Honor. And if we look at the record, I think that probation and the government explained further and made this appropriate under Tapia. The government said 24 months for all these reasons, and separate and apart. And the government said that three times in the record. Separate and apart, we need a housing designation at VOP for this individual to get treatment. Probation also made a distinction. Probation said 24 months for breach of the court's trust. But also, he needs a housing designation for treatment. And if we look at the court's discussion, the court is saying 24 months, breach of the court's trust. It's been a long time getting here. We've had a lot of violations. And then she goes on to discuss the housing designation and need for seven years of supervised release. Stating the reasons for that is, he needs treatment. We need to see progress here. And that ties into FESTA has failed to show that this has affected his substantial rights. So the judge did not recite the sentencing range, right? And then didn't explain what you're now trying to characterize as a departure or variance from the range. So it seems like you're doing a lot of reconstruction of what happened. And I'm trying to figure out how we get to where there wasn't an error at least some point along the way. Because the judge also didn't articulate the sentencing range. Your Honor, two answers to that. The district court said, I have a criminal history category one and multiple grade C violations. She did not say the magic words three to nine months. But this court on plain error has not required that. And it is clear that this district court was aware of the guideline range. It is in the record more than 10 times in every single OSC petition. It is stated at least twice. This district court was the same judge throughout every single hearing, every single violation. So under this court's decisions, where it is clear that where the court is aware of the guidelines, that is not plain error. And even if we assume the court was aware of the range, how do we get to the lack of explanation for variance? As this court in Carte and the Supreme Court in Gall and Rita have said, this court can look at the record as a whole. And as Judge Miller mentioned, this is inappropriate, and this is the reason for plain error. We need a contemporaneous objection so the court can explain further. But here, looking at the record as a whole, every single OSC petition, all of the arguments at the hearing, and Festa himself, when he allocated, said, I need treatment, absolutely. So here, there is enough in the record from the government, probation, and the court to show that the 24 months was for breach of the court's trust and appropriate reasons, such as danger to the community, and that the BOP housing designation and supervised release was for the other reasons. So the government takes the position that because we review this on plain error, that even though the judge did not explain his reasons for the sentence, which normally would be required, that if we look at the totality of the record, that takes the place of that explanation? Is that your position? That under plain error, it's not so clear and obvious of an error that this court should exercise its discretion to overrule? Can I just push you on that for a second? So the plain error standard has different prongs. The first prong is, was there an error? The second prong is, was the error clear or obvious under the law? I think we're talking about the first prong when we're trying to figure out what was the judge doing here, whether she really was using treatment to lengthen the sentence. We have to figure that out, and maybe there's some debate about that. But once we figure that out and move to the second prong, there's no debate that it was clear error if it was an error, right? Your Honor, I would disagree with that. I think if we look at the only case my colleague relies on is Tapia, the only published decision is Tapia. So if we say at the first prong, the judge lengthened the sentence to give treatment, you don't think it's clear that Tapia prohibits that? No, Your Honor, because Tapia is distinguishable in the facts. So there is no published case on these facts that are applicable. And why Tapia is distinguishable is it was referencing the RDAP program, the drug treatment program. And the district court made comments, you need to be in custody for a certain length of time to qualify for the program, and then to benefit from the time off that you get from being in the program. Those are not the facts here. And when we look at unpublished decisions. Well, here, wasn't everyone talking about how the programs take, I think it was 12 to 18 months. You might have to go to Butner. I mean, all of this is about how long it would take and how long the sentence needs to be so that you would get that treatment, right? Your Honor, I believe it was the probation officer and the government discussed two different treatment programs in BOP. But no one was saying you have to get this sentence to be able to be eligible. It's just how. Well, but to do the program, you needed a lengthy sentence, right? You can't do the sentence. You can't do the program in six months. There's no evidence that you can't partially do the program, I suppose, is what my argument would be. But even if we move to the third prong, Tapio has failed to show that it affected his substantial rights. He got graduated sentences. He got 20 months last time, and that didn't deter him. If these programs are. He didn't ever get 20 months, right? He just happened to have 20 months because they never sentenced him until after 20 months? Your Honor, there was repeated continuances. I believe in part because of the pandemic, but also because of defense counsel's heroic efforts to get him housing and services. But probation has stated at the hearing and in the petitions that despite every service available to him in the community, he remained a danger to the community. His doctor said he could not be. He could not control himself in the community. So if 20 months didn't deter, didn't help him get those services, then of course, the district court was appropriate in giving 24. And further evidence that. Are you aware that it says danger to the community as opposed to just he's going to violate again? I apologize. Can you explain, can you point to a place where they were talking about danger to the community rather than just talking about how he was going to violate the terms of the supervised release? Your Honor, in every single OSC petition, probation said it at least half a dozen times. He's a risk to the community. Confining him will keep the community safe. His doctors say he can't be trusted in the community. His doctors say, for example, he was having sexual fantasies about a 10-year-old boy in his hotel room. So the OSC petitions are replete with this idea that he was a danger to the community. But did the district court ever say that it had accepted that finding or that it had agreed with that conclusion necessarily? The district court never said the words danger to the community. Do either of my colleagues have additional questions? All right, thank you very much. All right, there's a little rebuttal time. Thank you. I think there's a lot that the government states that is not in the record. What we look at is what the court said. And the court said nothing about danger. The court said nothing about several of the things that the government states. The issue was, and the court issue, was rehabilitation. And even if we look in context of what was said, like Your Honor indicated, rehabilitation was the issue in the case. And the probation officer said, quote, at excerpt of Record 26, the custodial part of it is to allow him to get the treatment. And even the government, at the very end, right before the court announces the sentence, it says, I understand that Mr. Festa doesn't want to do time, quote, but the intensive program is what he needs, and that will potentially set him up for success once he gets out. And that's an excerpt of Record 30. Counsel, can I ask you this? The opposing counsel indicates that when we review on plain error with respect to the failure to describe why there was a variance, that we can look at the totality of the record, and basically that takes the place of the judge's finding. It's kind of remarkable to me. What's your position on that? I think we look into this court's en banc decision in Cardi, where Cardi says that it may be, if it's an easy case, but where the variance is so significant, as it is in here, almost 300%, there needs to be more, there has to be a justification. And I'd just like to finally say, because I see my time is running out. It's gone. Can I say? It's actually gone, but you finished your sentence. Oh, the question in here is not whether there was some permissible sentence based on all these other theories that the government says. The question is whether the court considered rehabilitation in imposing the sentence, and it did so here, and there's a reasonable probability that Mr. Festa would have, in fact, received a lesser sentence. Okay, do either of my colleagues have additional questions? Thank you, Your Honor. All right, our thanks to both counsel and I.
judges: SMITH, FRIEDLAND, MILLER